23-6259 We'll let you all get up here and settle at the council table. We will not be keeping council for over an hour. Please be seated. We will not be keeping council for over an hour. And so that was his obstruction. When he returned months later, they negotiated a plea. He actually pled without an agreement. There was a Pimentel letter submitted by the government. And at that time, he accepted responsibility for his actions by pleading guilty and admitting his guilt. And I think that that is sufficient to allow him to get the acceptance reduction. It's generally done in this circuit and in the districts within the circuit that a defendant who pleads gets his acceptance points. Maybe he doesn't get the third one here, but he at least gets two. I think it's generally the case when somebody literally tries to flee the country on a chartered flight that he's also getting his acceptance points. I guess I've never seen such a thing before. I understand that there could be discretion in very unique situations to get it, and I get it. You're arguing this is one of those unique situations. But I guess I've never seen it traditionally be the case that someone who gets obstruction points also gets acceptance. It seems like it's a very rare exception. It is a rare exception. But I think that it depends really on the factual situation. Now, the flight was in the very beginning of the case. The plea was obviously the very end of the case. And there were a lot of months in between. The crime was way before. Yes. And that's generally what he's getting sentenced for. So it's not like as time goes by, things that were in the distant past we just ignore. I mean, otherwise we would be discounting the crime itself. I'm not suggesting that the crime should have been discounted. Well, right. But I'm saying then why do we discount the effort to flee from the United States entirely? It's even more recent than the crime. So it's not like some youthful indiscretion that one can write off. No, I don't disagree with you, Judge Mardini. But I think that by the time he came back, he fled because he was afraid. There was COVID. There was the question of cooperation. Whatever the basis of his flight at that point, once he comes back and settles into, okay, I made a big mistake, and now I'm going to come forward and I'm going to accept responsibility for my actions, I think he should have been given credit for that. Was that denied by his lies in the proffer session? I wasn't at the proffer session. I'm not sure what happened there. I understand the government says he lied. Well, that's the record before us. It is. You're basically urging us to find that there's some error by the district court in rejecting the argument that there are extraordinary circumstances here warranting acceptance of responsibility, and I'm finding it difficult. I mean, I might agree there are extraordinary circumstances here, but not favorable to your client on this point. Well, I realize it's a tough lift for me here. But if it's all right with you, I'll move on to my second point, which I think is much more important, actually. Judge Furman did not really pronounce the special conditions. He referred to them by the page number in the PSR, and then we get into who Mr. DeJesus was. Here's a guy with a first grade or a fourth grade education, depending on which page you read, in the Dominican Republic, who by his own counsel's expression was unable to read. Oh, can I just ask you this? Was his counsel? He had counsel at the sentencing, right? He did. And he had the PSR, right? He did, but he can't read it. Well, had they conferred? You know, it's really unclear. Mr. Seidler said, yes, I conferred with him and I talked to him about the PSR, but he also said, I read it to him over the phone. He never met with him in person prior to the sentencing. But he read it to him. Using an interpreter. And there was no dispute. I mean, there was no suggestion. The client didn't stand up and say, no, he didn't read it to me, right? No, the client didn't say that. And was there an interpreter at the sentencing hearing? I assume so. Yes, the minutes reflect that. Okay. So if he had any problem reading along, assuming he needed an interpreter anyway, the interpreter could have picked up the PSR and read out paragraphs, whatever they were, to him, right? There's no indication that that was done. No, no, no, I see. Could have. I suppose. I mean, presumably the translator or the interpreter is literate. One would assume that. I think that the problem is that Judge Furman basically just referred to the pages of the PSR. Was there an objection to this? Was there an objection at the sentencing hearing to Judge Furman not reading them out loud? No. And is there any case of ours that has said it is impermissible to reference, to pronounce sentence by referencing a written piece of paper that's in front of the defendant with these conditions? There is not a case to that effect that I'm aware of. So I guess going to the plain error standard, which requires four things, that is plain, that affects substantial rights, and that then, you know, whatever. I understand. How do you get to the plainness of it? Because generally we say if there's no case on point saying that you can't do it, then we don't recognize it as error. So how do you get over the plainness or clearness of this purported error? I think the problem is that this is really fact specific. Because he was illiterate, because the PSR was read to him over the phone, there's no indication in the record that the PSR was read to him at the time of sentencing. Well, nobody reads it at the time of sentencing. I mean, do you really just go into a sentencing hearing and sit there and read the whole thing again in the middle of the court? You usually do that beforehand, right? Absolutely you do, but Mr. Seidler didn't do that. He did it over the phone. And I don't think we can assume that Mr. DeJesus understood specifically the special conditions is what I'm referring to. To the extent you're emphasizing your client's literacy, this is the client who chartered a private plane, right? Yes. Well, I'm impressed. I don't know that you have to read to do that. My understanding is somebody else paid for it. There's also objection to the imposition of the mental health conditions imposed. But that's difficult for me to understand when he asked for that at sentencing. Well, I don't know that he really asked for that. He asked for, in the PSR, it's clear that he said he could benefit from counseling. But I think that's a far cry from mandated treatment, including medication. That's a lot different, and I don't think that that condition was- There, too, though, there was no objection. No, I- And, I mean, you're urging us to read it quite differently from the text. But nobody said, well, I want health, but I don't want mental treatment. He said it, apparently, to the probation officer. Well, the statement in the record is that he-this is from the PSR-he would like to receive mental health counseling in the future and that he had been having stressors relating to his legal issues and him being away from his family. So, I mean, without objection, it seems that the court is giving him exactly what he wanted. I don't read it that way. I think that his- Now the question is whether the court erred. Right. I think that the mandated treatment goes beyond, yeah, I'd like to talk to a counselor. Well, with no objection, how is this a plain error? I- Okay, okay. Therein lies my problem. Thank you, thank you. Thank you. Thank you very much, counsel. And you've reserved a couple minutes for rebuttal. Yes. So if there's anything at the end you feel like you need to add, that's fine. Why don't we hear from the government and the USME? Yes, Your Honor. Good morning. May it please the court. AUSA Kevin Meade, representing the government on appeal, and I handled the proceedings in the district court below. There is no dispute that the defendant properly received an obstruction of justice enhancement sentencing. Judge Furman did not err when he concluded that obstruction enhancement meant that the defendant should not receive credit for acceptance of responsibility. That determination was consistent with the guidelines and Second Circuit law that defendants who obstruct justice do not receive acceptance points except in extraordinary cases. There was nothing extraordinary about the defendant's case in a favorable way, and Judge Furman's determination that he was not entitled to acceptance is entitled to substantial deference on review. The sentence Judge Furman imposed was also substantively reasonable. Judge Furman carefully considered the Section 3553A factors before concluding that a substantially below guideline sentence was appropriate for a serious fentanyl trafficker who had tried to flee the country by private plane after he was bailed. Finally, Judge Furman did not err when he imposed the conditions of supervised release. There was a colloquy about whether it was appropriate for Judge Furman to cite to the pages of the PSR about whether the defendant had read the PSR. I direct the court to page A60 of the appendix, and I'd just like to read briefly from the colloquy about whether the defendant had read the PSR. The court, Mr. DeJesus, have you read the pre-sentence report? Defense counsel, if I may, it was read to him, Your Honor, with an interpreter. He doesn't read. The court, Mr. DeJesus, is that correct? The pre-sentence report was read to you through an interpreter? The defendant, yes. The court, and did you discuss it with Mr. Seidler? The defendant, yes. The court, and did you have enough time to go over the report with him and to discuss anything that you wished to bring to my attention in connection with sentencing? The defendant, yes. The court was, of course, entitled to rely on those statements by the defendant that he'd read the PSR and that he'd had plenty of time to discuss it with counsel. Judge Furman then specifically referenced the pages containing the special conditions in the PSR, and the defense did not object to them, meaning that plain error review is appropriate. There was also ample basis for the mental health condition, especially on plain error review, given that the defendant told the probation office that he wanted to receive such mental health treatment. And absent any other questions, the government rests on its submission. I actually was just curious. Let's talk about the private flight. Was he the only guy? Was this like a Learjet, or was this like just a charter? That's a fair question. My understanding is that he was the only person on the plane, but I'm not positive about that. Not that it's dispositive, but I just have this image in my mind of the private flight. Then I heard charter, and I thought, sometimes you have big charters with a hundred people. Okay, that's it. Thank you. Actually, no, I do have a question for you. On this final question about the oral pronouncement of the conditions of supervised release, do we have any case that is squarely on point approving this particular form of oral pronouncement of cross-referencing the PSR? There are a number of summary orders, Your Honor, that are cited in our brief. But published cases, is the closest we have, Thomas, where we just sort of advert to, well, this didn't happen here, and we have other problems we'll cause? There's one other case, Your Honor. There's a case, United States v. Lewis, that was issued less than two weeks ago. It's 24-504. In that case, the facts were a little bit more favorable to the government, because I think the district judge explicitly asked the defendant, is it okay if I just refer to the pages in the PSR? And then the defendant or the defense lawyer said, yes. These facts are slightly different, although we don't think materially different, and we do think Lewis is useful to the court in that sense. All right. Was that the one that we have waiver? Yes, Your Honor. Okay, that's a little different. That's what we're saying, because he said yes, then he has waived it. So you don't even get into plain error, because waiver extinguishes any claim of error, whereas plain error is under Rule 52B. So it's a little different. I agree it's more favorable to the government in that case. I get that the scenario is similar, but okay. Thank you. Thank you. That's my only question. Mr. Weinstein, any last observations for us? Just once, I'd like to find a case that's favorable to me, as opposed to the government. But I have read the Lewis case. That is a waiver case, and that is different. I just think that under the facts here, with an illiterate defendant who does not speak English, who had everything read to him over the phone prior to the actual court proceeding, I think under those circumstances Judge Furman should have expressed the conditions of release, the special conditions, on the record. He did discuss the immigration conditions. He's on the record, but he didn't discuss the mental health conditions, and I think that that is an error on his part. If you're going to do it, do it all. If you're not going to do it and rely on the defendants having read the PSR, then rely on that and say so. But if you're going to express you're going to have to follow special conditions, including the immigration conditions and report, and if you're deported, you can't come back unless we let you. If you're going to do that, then you've got to talk about mental health too. Otherwise, the written judgment varies from the oral pronouncement. As a point of curiosity, and this maybe goes more to the Lewis point than anything else, in your experience and practice in the district courts, do you ask the district judge to orally pronounce all of the conditions for your clients, or do you ever waive them? And it's a waiver situation, not this case. I'm not asking that. To be honest, in the last year or so, given the pronouncements of this court, I think it's incumbent upon every defense attorney to say, Judge, please read the conditions. Or, if it's clear to me, then we could waive it. But I think we make a mistake and create an appellate issue if we don't ask the court to read the conditions. And I think the district judges are doing that. I just think of most times when someone's presented to the court, and the typical thing is, does the defendant waive the reading of the indictment? And I don't think I've ever been present when someone didn't waive the reading of an indictment. I've got a copy of it right here. I don't need anyone to say it out loud. I've threatened to do that sometimes, but not with any real meaning. But I think that's different than the special conditions because of the pronouncements from this court. So I think all the district judges do that. Mr. Wallenstein, you may be able to help me just so that I don't have to hunt. Where in the record do we look for the disclosure that the report was read to him on the phone? It's, I'll find it. It's in the, I think it's in the plea minutes. In the plea minutes? No. I doubt it. It would have to be in the sentence minutes. The sentence minutes. It would have to be in the sentence minutes. It is in the sentencing? Yes, Your Honor. I believe that's the case.   Thank you. It's in the sentencing minutes. If there's nothing else, that's... Yeah, I'm pretty sure I just saw it. Yeah. We'll find it. Okay. Thank you. All right. All right. Thank you all very much. We will take the case under re-advisement. Thank you.